**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 28 2002**

**PATRICK FISHER**
**Clerk**

PUBLISH

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

TODD POWELL,

        Petitioner - Appellant,

v.

CHARLES RAY, Warden [*];
W.A. DREW EDMONDSON,
Attorney General of Oklahoma,

        Respondents - Appellees.

No. 01-7125

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 99-CV-635-S)**

---

Submitted on the briefs:

Todd Powell, Pro Se.

W.A. Drew Edmondson, Attorney General of Oklahoma, William R. Holmes,
Assistant Attorney General, Oklahoma City, Oklahoma, for Respondents-
Appellees.

---

[*]    Charles Ray replaced Stephen Kaiser as the warden of the Davis
Correctional Facility in January 2001.

Before **HENRY** , Circuit Judge, **BRORBY** , Senior Circuit Judge, and **BRISCOE** , Circuit Judge.

---

**BRORBY** , Senior Circuit Judge.

---

Petitioner-appellant Todd Powell, proceeding pro se, is appealing the denial of his petition for writ of habeas corpus.  We previously granted Mr. Powell a certificate of appealability on his claim that the 1997 amendments to Okla. Stat. Ann. tit. 57, § 365, violate the Ex Post Facto Clause.  Our jurisdiction arises under 28 U.S.C. § 1291.  We affirm the denial of Mr. Powell's habeas petition. [1]

Because Mr. Powell is not challenging the validity of his conviction and sentence, but is instead challenging the implementation of the Oklahoma Truth in Sentencing Act, 1997 Okla. Sess. Laws ch. 133, we analyze his petition as if it had been filed under 28 U.S.C. § 2241, rather than 28 U.S.C. § 2254.  *See Montez v. McKinna* , 208 F.3d 862, 865 (10th Cir. 2000);  *Henderson v. Scott* , 260 F.3d 1213, 1214 (10th Cir. 2001),  *cert. denied* , 122 S. Ct. 1930 (2002).  Nonetheless, "we still accord deference to the [Oklahoma Court of Criminal Appeals'] determination of the federal constitutional issue."  *Henderson* , 260 F.3d at 1215.

---

[1]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

In 1990, Mr. Powell pled guilty to second degree felony murder, after former conviction of two or more felonies, and he was sentenced to thirty years imprisonment. After entering his plea, Mr. Powell was informed by the Oklahoma Pardon and Parole Board that he would be "considered" for pre-parole supervised release in October 1998 and for parole in November 1999. R., Doc. No. 10, Ex. A. Mr. Powell was further informed that these dates were "tentative," and that he would be "notified of any change in [his] parole consideration date." *Id*.

In 1997, the Oklahoma legislature enacted the Truth in Sentencing Act. The Act abolished the "Preparole Conditional Supervision Program" under Okla. Stat. Ann. tit. 57, § 365, [2] replacing it with "Specialized parole." *See* Okla. Stat. Ann. tit. 57, § 365 (1997). In accordance with this statutory change, Mr. Powell was not considered for pre-parole supervised release in October 1998. As originally scheduled, Mr. Powell was considered for parole in November 1999, but he was denied parole.

In 1999, Mr. Powell filed a habeas petition in state court, arguing that the amended statute violated the constitutional prohibition against ex post facto laws because it retroactively eliminated his chance to be considered for pre-parole

---

[2]      Section 365 was originally enacted by the Oklahoma legislature in 1988, and it was subsequently amended in 1989, 1990, 1991, and 1993. None of the amendments between 1988 and 1993 are relevant to this appeal.

supervised release. The trial court denied his petition, and the Oklahoma Court of

Criminal Appeals affirmed, finding that:

> The Truth in Sentencing Act's elimination of, or replacement of certain parole programs Petitioner <u>might</u> have been eligible for, does not inflict a greater punishment upon Petitioner. Petitioner, or any inmate for that matter, was never entitled to release under the [Pre-Parole Conditional Supervision Program]. Eligibility for PPCS was contingent upon an inmate meeting certain parole criteria **and** receiving a favorable recommendation from the Oklahoma Pardon and Parole Board. Because of such contingencies and speculation, Petitioner cannot demonstrate he was ever entitled to release under the PPCS program. The lack of such proof is fatal to Petitioner's quest for habeas relief.

R., Doc. No. 10, App. A at 2 (emphasis in original).

In his federal habeas petition, Mr. Powell has reasserted his claim that the

elimination of the pre-parole supervised release program violated the Ex Post

Facto Clause. The magistrate judge recommended that the district court deny the

petition because the elimination of the program "did not increase the punishment

prescribed at the time petitioner committed his criminal act." R., Doc. No. 31

at 4. The district court adopted the magistrate judge's recommendation and

denied the petition. [3]

---

[3] Mr. Powell also claims that the elimination of the pre-parole supervised release program violated his rights under Article 5, ¶ 54 of the Oklahoma Constitution which provides that "[t]he repeal of a statute shall not . . . affect any accrued right, or penalty incurred, or proceedings begun by virtue of such repealed statute." Okla. Const. art. 5, ¶ 54. This argument is without merit because Article 5, ¶ 54 only protects vested common law or statutory rights, *see*

(continued...)

We recently summarized the constitutional prohibition against ex post facto laws, and its application in the context of retroactive changes to laws governing parole of prisoners, as follows:

> The United States Constitution prohibits the states from passing any "ex post facto Law." U.S. Const. art. I, § 10, ¶ 1. This clause "is aimed at laws that retroactively alter the definition of crimes or increase the punishment for criminal acts." *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 504 (1995) (internal quotations and citations omitted). Two critical elements must be present for a law to fall within the ex post facto prohibition: "first, the law must be retrospective, that is, it must apply to events occurring before its enactment; and second, it must disadvantage the offender affected by it." *Miller v. Florida*, 482 U.S. 423, 430 (1987) (internal quotations and citations omitted).
>
> The Supreme Court has rejected the argument "that the Ex Post Facto Clause forbids any legislative change that has any conceivable risk of affecting a prisoner's punishment." *Morales*, 514 U.S. at 508. The Ex Post Facto Clause was never intended to result in judicial "micromanagement of an endless array of legislative adjustments to parole and sentencing procedures . . ." *Id.* Instead, the Court has consistently held that "the question of what legislative adjustments will be held to be of sufficient moment to transgress the constitutional prohibition *must* be a matter of degree." *Id.* at 509 (internal quotations and citations omitted, emphasis in original). "Retroactive changes in laws governing parole of prisoners, in some

---

³(...continued)
*Messenger v. Messenger*, 827 P.2d 865, 871 (Okla. 1992), and Mr. Powell did not have a vested right to pre-parole supervised release. Mr. Powell also claims that he was denied parole in November 1999 because the Governor of Oklahoma had adopted an unlawful policy of excluding all violent felons from being considered for parole. While Mr. Powell asserted this claim in his traverse to respondents' response to his habeas petition, *see* R., Doc. No. 26 at 9-11, he subsequently waived it by failing to assert it in his objections to the magistrate judge's findings and recommendations, *see id.* at Doc. Nos. 31 and 33.

instances, may be violative" of the prohibition against ex post facto laws, *Garner v. Jones*, 529 U.S. 244, 250 (2000), but the controlling inquiry is not whether the law is retroactive, but "whether it produces a sufficient risk of increasing the measure of punishment attached to the covered crimes.'" *Morales*, 514 U.S. at 509 (footnote omitted); *see also Lynce v. Mathis*, 519 U.S. 433, 444 (1997). When the amendment creates only "the most speculative and attenuated possibility" of increasing the measure of punishment, it is "insufficient under any threshold" to violate the Ex Post Facto Clause." *Morales,* 514 U.S. at 509.

*Henderson*, 260 F.3d at 1215-16 (parallel citations omitted).

Mr. Powell was originally to have been considered for pre-parole supervised release in October 1998–thirteen months before he was to be considered for parole. As a result, the elimination of the pre-parole supervised release program "affect[ed] the timing of [his] initial parole consideration," *id.* at 1216, and this is a critical factor for purposes of determining whether he has a valid ex post facto claim, *see Morales*, 514 U.S. at 511.

Nonetheless, the controlling inquiry is whether Mr. Powell has shown that the elimination of the pre-parole supervised release program created more than a speculative risk that his prison term would be increased. *See Henderson*, 260 F.3d at 1216. We hold that he has failed to make such a showing. Most importantly, among other requirements, the pre-1997 statute required that:

> B. Upon an inmate becoming eligible for this program it shall be the duty of the Pardon and Parole Board, with or without application being made, to cause *an examination to be made of the criminal record of the inmate and to make inquiry into the conduct*

*and the record of said inmate during his confinement in the custody of the Department of Corrections*.

C. *Upon favorable recommendation by the Pardon and Parole Board*, notification shall be made to the Department of Corrections that said inmate has been recommended to be placed in the [Preparole Conditional Supervision Program].

Okla. Stat. Ann. tit. 57, § 365(B), (C) (1993) (emphasis added).

In light of these statutory requirements, the determination of whether a prisoner would be entitled to a pre-parole release was wholly discretionary, and it is therefore pure speculation to argue that the elimination of the program has increased the term of Mr. Powell's incarceration. The fact that Mr. Powell was denied parole only thirteen months after he was to have been considered for pre-parole supervised release bolsters our conclusion in this regard because Mr. Powell has failed to demonstrate that there were any significant differences between the discretionary criteria governing the two forms of release as applied to his particular circumstances. Accordingly, Mr. Powell has not shown that the amended statute has had the effect of prolonging his punishment, and his ex post facto claim must fail. *See Henderson*, 260 F.3d at 1217.

The judgment of the district court is AFFIRMED.[4]

---

[4] On July 23, 2002, Mr. Powell filed a motion for leave to file a supplemental reply brief. We deny the motion for leave.