**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 7, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CHRISTOPHER E. KOCH,

      Plaintiff-Appellant,

v.

J. D. DANIELS, Assistant Director of
the Oklahoma Pardon and Parole
Board,

      Defendant-Appellee.

No. 07-6210

(D.C. No. 5:07-CV-00015-HE)
(W. D. Oklahoma)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE, EBEL,** and **MURPHY**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination

of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is,

therefore, submitted without oral argument.

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

Plaintiff-Appellant Christopher Koch filed this *pro se* action under 42 U.S.C. § 1983, alleging that 1997 and 1998 amendments to the Oklahoma parole statutes resulted in ex post facto punishment and violated his due process rights. The district court dismissed the case for failure to state a claim upon which relief could be granted. We have jurisdiction pursuant to 28 U.S.C. § 1291, and affirm.

I.

In 1981, Koch was tried for and convicted of Murder in the First Degree in Oklahoma state court. He received a life sentence with the possibility of parole, which he is currently serving with the Oklahoma Department of Corrections. Under the parole system in existence at the time of Koch's conviction, the Pardon and Parole Board ("Board") would annually consider for parole any inmate serving forty-five years or longer, including a life sentence, after he or she had served fifteen years. See Shirley v. Chestnut, 603 F.2d 805, 806-07 (10th Cir. 1979) (describing the features of this system). Accordingly, Koch first became eligible for parole in 1996.

As a response to prison overcrowding, in 1988 the Oklahoma legislature created a system known as preparole conditional supervision ("preparole"). See 1988 Okla. Sess. Laws 310, § 8. In Young v. Harper, 520 U.S. 143 (1997), the Supreme Court described the essential features of preparole:

> [Preparole] was in effect whenever the population of the prison
> system exceeded 95% of its capacity. An inmate could be placed on
> preparole after serving 15% of his sentence, and he was eligible for

-2-

parole when one-third of his sentence had elapsed.  The Pardon and Parole Board (Board) had a role in the placement of both parolees and preparolees.  The Board itself determined who could participate in [preparole], while the Governor, based on the Board's recommendation, decided whether a prisoner would be paroled. . . . [P]articipants in preparole were released subject to constraints similar to those imposed on parolees.

Id. at 145 (citations omitted).  According to Koch, he was initially considered for and denied preparole in 1995.  He further alleges that from 1996 to 1998, the Board considered him for and denied him both parole and preparole annually.

In 1997, the Oklahoma legislature enacted the Truth in Sentencing Act, which amended the statute authorizing preparole and replaced preparole with "specialized parole."  See 1997 Okla. Sess. Laws 133, § 28.  The eligibility requirements for specialized parole differ from the eligibility requirements for preparole in several key respects.  The availability of specialized parole does not depend on prison capacity.  See Okla. Stat. tit. 57, § 365.  Under the new regime, only inmates within one or two years of their projected release dates are eligible for specialized parole.  Id.  As a result of this amendment, Koch was no longer considered for preparole beginning in 1999.

In 1998, the Oklahoma legislature further amended the parole statutes, authorizing the Board to defer parole consideration for up to three years for any individual who had been convicted of a violent crime and who had been denied parole previously.  See Okla. Stat. tit. 57, § 332.7(D)(1).  As a result of this amendment, after being considered for and denied parole in 1998, Koch was

-3-

considered again only in 2001 and 2005, rather than annually, and was denied parole both times.

On January 4, 2007, Koch filed this § 1983 action against J.D. Daniels in his official capacity as Deputy Director of the Oklahoma Pardon and Parole Board. Koch alleged that the 1997 and 1998 amendments to the parole statutes constituted ex post facto punishments and violated his due process rights. Koch's complaint was referred to a United States magistrate judge for preliminary review pursuant to 28 U.S.C. § 636(b)(1)(B). Before Daniels had filed an answer to the complaint, the magistrate judge issued a Report and Recommendation determining that Koch's complaint failed to state a claim upon which relief could be granted and recommending that the complaint be dismissed pursuant to 28 U.S.C. § 1915A(b)(1)[1] and 42 U.S.C. § 1997e(c)(1).[2] Specifically, the Report and Recommendation concluded that the 1997 and 1998 amendments did not produce a sufficient risk of increasing Koch's punishment and thus did not violate the Ex Post Facto Clause, and that Koch had no constitutionally-cognizable liberty

_____

[1] 28 U.S.C. § 1915A(b)(1) provides in pertinent part that a court conducting preliminary review in civil cases in which a prisoner seeks relief from a governmental entity "shall identify cognizable claims or dismiss the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted . . . ."

[2] 42 U.S.C. § 1997e(c)(1), a part of the Prisoner Litigation Reform Act of 1996, applies to suits by prisoners challenging prison conditions under 42 U.S.C. § 1983 and permits a court to dismiss such a suit "if the court is satisfied that the action is frivolous, malicious, [or] fails to state a claim upon which relief can be granted . . . ."

interest in annual consideration for parole or in consideration for preparole. The Report and Recommendation also concluded that Koch's claims accrued no later than 2001, when he should have known that he was no longer being considered for preparole or for parole on an annual basis, and that the claims were thus barred by Oklahoma's two-year statute of limitations.

Koch filed an objection to this Report and Recommendation. On July 10, 2007, the district court, having considered Koch's objections, adopted the Report and Recommendation and dismissed Koch's claims with prejudice.

## II.

### A. Jurisdiction and the Mailbox Rule

"[T]he timely filing of a notice of appeal in a civil case is a jurisdictional requirement," and in the absence of a timely notice of appeal, a case "must be dismissed for want of jurisdiction." Bowles v. Russell, — U.S. —, 127 S. Ct. 2360, 2366 (2007) (quotation marks and citation omitted). Pursuant to 28 U.S.C. § 2107(a) and Rule 4(a)(1)(A) of the Federal Rules of Appellate Procedure, Koch's notice of appeal was due within thirty days of entry of judgment. The final judgment from which Koch appeals was entered on July 10, 2007, and Koch's notice of appeal was therefore due by August 9, 2007. His notice of appeal, however, was not filed in the district court until August 10, 2007.

Due to the untimely filing of Koch's notice of appeal, this court issued an order directing Koch to show cause why his appeal should not be dismissed. In

-5-

response, Koch filed a response stating that he placed his notice of appeal into the prison's "legal mail box . . . located within the prison law library" on August 8, 2007. Aplt. Resp. to Show Cause Order at 1 ¶ 1. Attached to the response as Exhibit B was a document titled "Request to Staff," which stated that Koch deposited an envelope addressed to the district court into the prison's mail system on August 8. This document was signed by an unidentified person, presumably an employee of the prison's mail room.

As an inmate confined in an institution, Koch's filings are subject to the "prison mailbox rule" set forth in Rule 4(c)(1) of the Federal Rules of Appellate Procedure, which provides that "[i]f an inmate confined in an institution files a notice of appeal in either a civil or a criminal case, the notice is timely if it is deposited in the institution's internal mail system on or before the last day for filing." Thus, under this rule, "a notice of appeal filed by a prisoner is deemed filed on the date the prisoner deposits the notice in the prison mail system, and not on the date when it is received by the clerk of the court." Ingram v. Jones, 507 F.3d 640, 643 (7th Cir. 2007) (citing Houston v. Lack, 487 U.S. 266, 275-76 (1988)). Rule 4(c)(1) also provides that

> [i]f an institution has a system designed for legal mail, the inmate
> must use that system to receive the benefit of this rule. Timely filing
> may be shown by a declaration in compliance with 28 U.S.C. § 1746
> or by a notarized statement, either of which must set forth the date of
> deposit and state that first-class postage has been prepaid.

We have read Rule 4(c)(1) to provide two ways for an inmate to establish

timely filing under the prison mailbox rule.  <u>Price v. Philpot</u>, 420 F.3d 1158, 1165

(10th Cir. 2005).  An inmate can show timely filing

> by either (1) alleging and proving that he or she made timely use of
> the prison's legal mail system if a satisfactory system is available, or
> (2) if a legal system is not available, then by timely use of the
> prison's regular mail system in combination with a notarized
> statement or a declaration under penalty of perjury of the date on
> which the documents were given to prison authorities and attesting
> that postage was prepaid.

<u>Id.</u> at 1166 (citing <u>United States v. Ceballos-Martinez</u>, 387 F.3d 1140, 1144-45

(10th Cir. 2004)).  The appellant bears the burden of proving compliance with the

rule.  <u>Id.</u> at 1165.

After Koch filed his response to the show cause order, this court appointed

counsel to represent him on appeal.  Appointed counsel subsequently filed, and

this court granted, a motion to supplement the record with (a) a "joint stipulation

of jurisdictional facts" wherein the parties agreed that Koch had deposited his

notice of appeal in the prison's legal mail system on August 8, 2007; (b) a copy

of the prison's legal mail log showing that Koch deposited his notice of appeal on

August 8; and (c) a description of the prison's legal mail procedures.  In addition,

Koch filed a "supplemental declaration of compliance" in this court.  In this

declaration, which is notarized, Koch swears "under penalty of perjury" that his

notice of appeal was placed in the prison's legal mail system on August 8, 2007

"with first-class postage prepaid."  <u>See</u> Aplt. Br., Attach. A.  These documents,

taken together, are sufficient to establish that Koch used the legal mail system

-7-

under the first test.  Thus, Koch has proven that his notice of appeal was timely

filed in accordance with the "prison mailbox rule," and that we have jurisdiction

to consider this appeal.

B.      The District Court's Dismissal

We review *de novo* the dismissal of a complaint for failure to state a claim

pursuant to 28 U.S.C. § 1915A and/or 42 U.S.C. § 1997e(c)(1).  McBride v. Deer,

240 F.3d 1287, 1289 (10th Cir. 2001).  "[I]n reviewing the dismissal of a

complaint, all well-pleaded facts, as distinguished from conclusory allegations,

must be taken as true.  In addition, we will take the allegations in the plaintiff's

objections to the magistrate's report and recommendation as true."  Id. (citation,

quotations, and alterations omitted).

1.      Alleged Ex Post Facto Violation

The United States Constitution prohibits states from passing any "ex post

facto Law."  U.S. Const. art. I, § 10, cl. 1.  As the Supreme Court explained, this

clause "forbids the imposition of punishment more severe than the punishment

assigned by law when the act to be punished occurred."  Weaver v. Graham, 450

U.S. 24, 30 (1981).  "Retroactive changes in laws governing parole of prisoners,

in some instances, may be violative of this precept."  Garner v. Jones, 529 U.S.

244, 250 (2000).  A retroactive change to a parole law violates the Ex Post Facto

Clause if it creates "a sufficient risk of increasing the measure of punishment

attached to the covered crimes."  Id. (quoting California Dep't of Corr. v.

<u>Morales</u>, 514 U.S. 499, 509 (1995)).

A retroactive law may not violate the Ex Post Facto Clause on its face, yet may still be applied in a way that increases a convict's punishment and therefore violates the Clause. <u>Id.</u> at 255-57. Where, however, "the rule does not by its own terms show a significant risk" of heightened punishment, to succeed on an as-applied challenge, "the petitioner must demonstrate, by evidence drawn from the rule's practical implementation, that its retroactive application will result in a longer period of incarceration than under the earlier rule." <u>Henderson v. Scott</u>, 260 F.3d 1213, 1216 (10th Cir. 2001) (citation, quotation marks, and alterations omitted). In prior decisions, this court has concluded that the amendments to the Oklahoma parole system that are at issue in Koch's appeal do not violate the Ex Post Facto Clause. While these cases do not address the specific circumstances of Koch's case, they provide a starting point for addressing his contentions.

In <u>Powell v. Ray</u>, 301 F.3d 1200 (10th Cir. 2002), this court considered whether the 1997 amendment that eliminated preparole violated the Ex Post Facto Clause. "[T]he controlling inquiry" for this purpose was whether "the elimination of [preparole] created more than a speculative risk that [an inmate's] prison term would be increased." <u>Id.</u> at 1203. We noted that under the pre-1997 statute, "the determination of whether a prisoner would be entitled to [preparole] was wholly discretionary" on the part of the Board. <u>Id.</u> at 1204. As a result, it was "pure speculation" for Powell to argue that the elimination of preparole increased the

term of his incarceration or prolonged his punishment, particularly where he had been denied parole just over a year after he would have been considered for preparole. Id.

Similarly, in Henderson, 260 F.3d at 1216-17, this court rejected an ex post facto challenge to the 1998 amendment lengthening for violent criminals the period between parole reviews from one to three years. Noting that the Supreme Court had previously rebuffed similar challenges to California and Georgia statutory amendments, see Garner, 529 U.S. at 254; Morales, 514 U.S. at 510-11, this court concluded that the Oklahoma amendment also passed constitutional muster. In reaching this conclusion, we specifically noted that the amendment: (1) "does not change the length of the sentence in any way"; (2) "does not affect the timing of the initial parole consideration, only of subsequent parole consideration dates"; (3) "reserves the Board's discretion to reconsider parole before the three-year period has expired"; and (4) permits the Board to "modify parole consideration dates if the Board receives new information." Henderson, 260 F.3d at 1216-17; see also Seegars v. Ward, 124 F. App'x 637, 638-39 (10th Cir. 2005) (affirming dismissal of plaintiff's complaint for failure to state a claim; change to plaintiff's parole eligibility dates "could not have altered the definition of criminal conduct nor increased punishment for a crime").

Koch acknowledges these cases. He argues, however, that they do not foreclose relief in the present case because these prior cases considered the

elimination of preparole and the lengthening of parole consideration periods from one to three years *in isolation*, and did not consider "the cumulative impact" of the 1997 and 1998 amendments. Aplt. Br. at 36. He argues that even if the 1997 and 1998 amendments, taken alone, do not give rise to an ex post facto violation (either facially or as applied to the facts of his case), when they are taken together they create a risk of increased punishment.

Even assuming that the cumulative impact of otherwise enforceable laws can constitute an ex post facto violation, this theory does not aid Koch. As stated, the Ex Post Facto Clause "forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred." Weaver, 450 U.S. at 30 (emphasis added). Preparole did not exist until it was created by statute in 1988, long after Koch's 1981 conviction. By later eliminating preparole, the legislature did not increase Koch's potential punishment beyond what it had been when he committed his crime in 1981, but at most returned it to what it was in 1981. Thus, even under Koch's "cumulative impact" theory, the only impact that matters for ex post facto purposes is the impact of the 1998 amendment, which lengthened the period between parole reviews from one year, as was the practice at the time of Koch's crime and conviction, to three years. As discussed, this court held in Henderson that the 1998 amendment does not constitute a facial ex post facto violation.

2.      Alleged Due Process Violation

The district court, adopting the magistrate judge's Report and Recommendation, concluded that Koch's due process claims should be dismissed because Koch had no constitutionally-protected liberty interest in either preparole consideration or in annual consideration for parole. The Due Process Clause "only applies when government action deprives a person of liberty or property." United States v. Hampshire, 95 F.3d 999, 1005 (10th Cir. 1996) (quoting Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979)). Thus, although the Due Process Clause provides both substantive and procedural protections, as an essential component of any due process analysis under 42 U.S.C. § 1983, we must first address whether the plaintiff has identified a liberty or property interest of which he or she has been deprived. Nichols v. Bd. of County Comm'rs, 506 F.3d 962, 969 (10th Cir. 2007).

"A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (citations omitted). Here, Koch claims that the 1997 and 1998 amendments violated his "liberty interest in parole and in participation in the parole consideration process." Aplt. Br. at 38. He admits that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence," and concedes that he therefore has no

-12-

constitutionally-derived interest in the parole and preparole consideration procedures. Id. (quoting Greenholtz, 442 U.S. at 7). He argues, however, that the statutes relating to preparole and parole *created* such an interest. See Sandin v. Conner, 515 U.S. 472, 483-84 (1995) ("[S]tates may under certain circumstances create liberty interests which are protected by the Due Process Clause."). We disagree with Koch's characterization of the statutes at issue.

A statute that "holds out the *possibility* of parole provides no more than a mere hope that the benefit will be obtained," and this hope "is not protected by due process." Greenholtz, 442 U.S. at 11 (emphasis in original). A plaintiff may establish more than "mere hope" in a particular outcome where a decisionmaker's discretion is limited by rule or statute, requiring a particular outcome in given circumstances. Nichols, 506 F.3d at 970. Where, however, the decisionmaker "retains discretion and the outcome of the proceeding is not determined" in advance, "no property interest is implicated." Id. (citation omitted).

Koch concedes that this court has concluded that the Oklahoma statutes governing parole and preparole create no liberty or property interest: the decision whether to grant parole or preparole to an inmate lies firmly within the discretion of the Board, the Department of Corrections, and/or the governor. See Boutwell v. Keating, 399 F.3d 1203, 1213-15 (10th Cir. 2005) (holding inmate had no due process interest in preparole where statute placed no limitations on the Board's decision to recommend preparole placement or Department of Corrections'

-13-

decision to grant or deny preparole); <u>Shirley</u>, 603 F.2d at 807 (holding inmate had no due process interest in parole where statute placed no limitations on Parole Board's decision to recommend parole or governor's decision to grant or deny parole). Koch responds to these cases by arguing that "the framework which these cases apply is fundamentally flawed by overreliance on the discretionary nature of the statutory scheme and thus insufficiently protects rights properly secured to the inmates by the Due Process Clause." Aplt. Br. at 39. We are, however, "bound by the precedent of prior panels absent en banc reconsideration or a superseding decision by the Supreme Court." <u>Shubargo v. Astrue</u>, 498 F.3d 1086, 1088 n.1 (10th Cir. 2007) (quoting <u>In re Smith</u>, 10 F.3d 723, 724 (10th Cir. 1993)). Koch suggests that these precedential cases should be overruled, but he points to no authority upon which we could base such action.

The result is no different if Koch's asserted interest is not the grant of parole or preparole, but merely his annual consideration for those programs. If Koch has no constitutionally-protected liberty interest in parole or preparole, he can have no interest in how often he is considered for them, or even whether he is considered for them at all. <u>See</u> <u>Olim v. Wakinekona</u>, 461 U.S. 238, 251 n.12 (1983) ("[A]n expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause."). Rather, "a liberty interest . . . is a substantive interest of an individual; it cannot be the right to demand needless formality. Process is not an end in itself. Its constitutional purpose is to protect a

-14-

substantive interest to which the individual has a legitimate claim of entitlement."

Id. at 250 (citations omitted); see also Town of Castle Rock v. Gonzales, 545 U.S. 748, 763 (2005) (stating that an entitlement to "nothing but procedure" cannot be "the basis for a property interest").  Because there are no constitutionally-protected interests in the process at issue, and because he failed to show an entitlement to a liberty interest in parole or preparole, Koch's due process claims fail.

3.     Statute of Limitations

Having concluded that there is no merit to Koch's ex post facto or due process claims, we need not consider the district court's application of the statute of limitations.

## III.

We affirm the district court's dismissal for failure to state a claim upon which relief could be granted.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

-15-